IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRANCH BANKING AND TRUST )
COMPANY, )
 )
    Plaintiff, )
 )
v. ) CIVIL ACTION NO. 10-00518-KD-N
 )
R&T RENTALS, LLC, et al., )
 )
    Defendants. )

## REPORT AND RECOMMENDATION

This action is before the Court on a motion (doc. 22) filed by the defendants, R&T Rentals, L.L.C. ("R&T Rentals") and F. Rutherford Smith, Jr. ("Smith") to dismiss the First Amended Complaint (doc. 21) filed by Branch Banking and Trust Company ("BB&T") for lack of subject matter jurisdiction.[1] Also before the Court is a similar motion to dismiss for lack of jurisdiction (doc. 6) filed by the remaining defendant in this action, C. Thurmon Bell ("Bell"), prior to the filing of plaintiff's First Amended Complaint.[2] These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for entry of a report and recommendation. Upon consideration of the motions to dismiss (docs. 6, 14 and 22), plaintiff's responses in opposition thereto (docs. 11, 18 and 26), the reply (doc. 19) filed by R & T Rentals,

---

[1] In this present motion to dismiss, R&T Rentals and Smith adopt their previous motion to dismiss (doc. 14), as well as their reply (doc. 19) to plaintiff's response in opposition thereto (doc. 18). In their first motion (doc. 14), these defendants had adopted the arguments set forth in Bell's motion to dismiss (doc. 6).

[2] Bell did not file a motion to dismiss plaintiff's first amended complaint.

L.L.C. and F. Rutherford Smith, Jr., and all other pertinent portions of the record, it is recommended that the motions to dismiss be **DENIED**.

## I. STANDARD OF REVIEW

A. Rule 12(b)(1) Motion to Dismiss.

"A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is a motion challenging the subject matter jurisdiction of the court." Spring Air International, LLC v. R.T.G. Furniture Corp., 2010 WL 4117627, *1 (M.D. Fla. Oct. 19, 2010). "Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) may attack jurisdiction facially or factually." *Id.*, *quoting* Morrison v. Amway Corp., 323 F.3d 920, 925 n. 5 (11th Cir. 2003). With respect to a facial challenge, the allegations in the complaint are assumed to be true by the Court, which then must determine whether the complaint sufficiently alleges a basis for subject matter jurisdiction. *Id.*, *citing* Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). In contrast to a facial challenge, a factual attack challenges the "existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at *2, *quoting* Lawrence, 919 F.2d at 1529. *See also* Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 n. 9 (11th Cir. 1982)(Distinguishing facial and factual attacks on jurisdiction and concluding that a conclusive resolution of a jurisdictional challenge based on disputed facts cannot be made unless the facts are fully developed.)(*citing* Chatham Condominium Ass'ns v. Century Village, Inc., 597 F.2d 1002, 1012 (5th Cir. 1979)("Where adequate time is given to complete discovery and all the jurisdictional facts are fully developed and placed before the court during an adversary hearing, a district court may, in a clear-cut case, dismiss an antitrust suit for

lack of subject matter jurisdiction [and] the preferred procedure in cases such as the present one, where the jurisdictional issue is inextricably bound up with the merits, is to defer resolution of the jurisdictional question to a consideration of the merits.").

As applied to this case, defendants essentially present their jurisdictional attack as a factual attack by contending that plaintiff has failed to prove: (1) that all of Colonial Bank's interest in defendants' loan/mortgage was assigned to BB&T; and (2) that, as the successor to Colonial Bank, BB&T's principal place of business is in Winston-Salem, North Carolina. The challenge regarding BB&T's citizenship is predicated solely on the unsupported contention that Colonial Bank's former corporate headquarters now bears a sign indicating that BB&T now occupies that building. Although defendants have rested their attack on the mere contention that BB&T's jurisdictional claim is unsupported by any evidence, defendants have not themselves submitted any affidavits, testimony, or other evidentiary materials which would demonstrate that a given fact, such as BB&T's contention that its principal place of business is located Winston-Salem, North Carolina, is in fact disputed.[3] Defendants have presented no legal authority for the proposition that they may simply challenge jurisdiction by contending that plaintiff's allegation of its own citizenship is made in a "conclusory fashion." (Doc. 14 at ¶ 3; Doc. 19 at ¶ 7). The Fifth Circuit has drawn a distinction between a supported and unsupported jurisdictional challenge as follows:

> Simply stated, if the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the

---

[3] BB&T has now submitted ample evidence which establishes the assignment and transfer to BB&T of ***all*** Colonial Bank's interest in the promissory notes at issue by the Federal Deposit Insurance Corporation (FDIC), as receiver for Colonial Bank. (Doc. 21 at 6-20). Defendants have not specifically challenged the validity of BB&T's documentary evidence regarding this assignment and transfer.

complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands. If a defendant makes a "*factual attack*" upon the court's subject matter jurisdiction over the lawsuit, **the defendant submits affidavits, testimony, or other evidentiary materials**. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.

Paterson v. Weinberger 644 F.2d 521, 523 (5th Cir. 1981)(emphasis added).[4] *See also* Iwanowa v. Ford Motor Co., 67 F.Supp.2d 424, 438 (D. N.J. 1999)("Although Defendants have not stated whether they consider their Rule 12(b)(1) motion to be a facial or factual attack, they have attached the Declaration of Professor Gerhard Laule to their reply brief. Furthermore, Iwanowa submitted the Declaration of Dr. Ekkehard Schumann with her opposition brief. Therefore, this Court will evaluate the 12(b)(1) motion as a factual attack and consider the declarations that the parties have submitted."); Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)(In order to resolve jurisdictional issues, "the district court is not limited to an inquiry into undisputed facts [and] may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction.").[5] As stated previously, defendants have themselves proffered no more than conclusory allegations that diversity jurisdiction is nonexistent in this case.

---

[4] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent on the Eleventh Circuit. Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

[5] R&T Rentals and Smith argue in their reply brief that they should be allowed "to conduct discovery into the veracity of Plaintiff's still conclusory-style affidavit that its North Carolina headquarters is the center of direction and control for the Plaintiff." (Doc. 19 at ¶ 9). The Court entered an Order on January 4, 2011, giving the parties "until **February 15, 2011** to complete jurisdictional discovery," (Doc. 27 at 1). There is no indication in this record that any written discovery was ever propounded to the plaintiff by any of the defendants. In point of fact, plaintiff expressly contends that "[n]o written discovery was filed during the forty-five (45) day jurisdictional discovery period and there is no written discovery pending at this time." (Doc. 34 at ¶ 11).

In addition, defendants' challenge to jurisdiction on the grounds that plaintiff has failed to prove that all of Colonial Bank's interest in defendants' loan/mortgage was assigned to BB&T implicates other legal principles. Had the defendants proffered actual evidence casting doubt on the validity of the FDIC's transfer of Colonial Bank's interest to BB&T, the jurisdiction facts would have been intertwined with the merits of BB&T's claim against the defendants. In such cases, Court's have recognized that resolution of the jurisdictional challenge should be delayed until trial. "Where the jurisdictional issues are intertwined with the substantive merits, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other'." Eaton, 692 F.2d at 733, *quoting* Chatham, 597 F.2d at 1011. *See also* Christofano v. Atlantic View Motel., 2004 WL 502168, *1 (D. Del. Feb. 27, 2004) ("Although the court should determine subject matter jurisdiction at the outset of a case, 'the truth of jurisdictional allegations need not always be determined with finality at the threshold of litigation' [but,] [r]ather, a party may first establish jurisdiction "by means of a nonfrivolous assertion of jurisdictional elements and any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone (as distinct from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection).")(*quoting* Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 537-38 (1995) (citations omitted).)[6]

---

[6] The Christofano court also held that:

> Whether defendant is an employer within the meaning of the ADA is a factual issue, the truth of which need not be determined at the threshold stage of litigation. In the present case, the court is satisfied that plaintiffs have sufficiently alleged the requisite jurisdictional elements at this stage in the litigation. If, however, through the course of

(Continued)

In <u>Mortensen v. First Federal Sav. and Loan Ass'n</u>, 549 F.2d 884, 891 (3rd Cir. 1977), the defendant attacked subject matter jurisdiction "in fact", meaning it challenged the existence of certain jurisdictional facts alleged by the plaintiffs as opposed to a mere facial attack on the allegations of the complaint. <u>Mortensen</u> also held that, in cases in which the jurisdictional facts are closely intertwined with the merits of the claim, "it is incumbent upon the trial judge to demand less in the way of jurisdictional proof [during the early stages of the litigation] than would be appropriate at a trial stage." <u>Mortensen</u>, 549 F.2d at 892; *see also* <u>Carpet Group International v. Oriental Rug Importers Ass'n, Inc.</u>, 227 F.3d 62, 72 (3rd Cir. 2000). Although <u>Mortensen</u> dealt with a Sherman Act case in which the defendants challenged the existence of the required interstate nexus and thus the Court's subject matter jurisdiction, the Third Circuit's analysis of the burdens of proof and evaluation required by the court with respect to motions to dismiss under Rule 12(b)(6) and 12(b)(1) is instructive:

> If a court tests the sufficiency of interstate allegations under Fed.R.Civ.P. 12(b) (6) on the pleadings alone, the plaintiff need only have pleaded a sufficient nexus with interstate commerce, and will not be forced to prove those allegations at a pretrial stage. And if the court does go beyond the pleadings, it still must take plaintiff's allegations as true. In addition, the court cannot enter judgment if it appears that there is a material issue of disputed fact, but must await discovery and trial, during which plaintiff will have the opportunity to prove those material facts. But if this same nexus of interstate commerce is attacked as insufficient to provide jurisdiction in fact, rather than under rule 12(b)(6), the plaintiff must either prove the truth of the alleged nexus or stand by while the court evaluates those allegations in the same way a jury would evaluate that

discovery plaintiffs are unable to establish that defendant's enterprise satisfies the statutory definition, defendant will be entitled to summary judgment."

<u>Christofano</u>, 2004 WL 502168 at *2.

nexus as part of plaintiff's case on the merits, or as a court would in considering summary judgment.

This 12(b)(1) factual evaluation may occur at any stage of the proceedings, from the time the answer has been served [FN17] until after the trial has been completed. It is a combination of the timing of the factual jurisdictional attack, the plaintiff's having the burden of proof, and the court's having a free hand in evaluating jurisdictional evidence that can unfairly preclude Sherman Act plaintiffs from reaching the merits of their cases. And it is *because the nexus they will have to establish to succeed on the merits is at least in part the same nexus they must allege or even prove to withstand jurisdictional attacks, that we feel it is incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage*. In the case sub judice, for instance, the plaintiffs had alleged substantial interstate connections and effects. This is not to say that the trial court may never properly dismiss a Sherman Act claim on a factual 12(b) (1) motion. *In an unusual case it may be clear that plaintiffs would not be able to prove the necessary interstate nexus. In the case before us, however, that inability is not apparent from the record*.

FN17. *A factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted*.

Mortensen, 549 F.2d at 891-92 (emphasis added). However, in the instant case, defendants have proffered only conclusory allegations challenging the validity of the FDIC's assignment of all Colonial Bank's interest in the loans at issue.

B.  Subject Matter Jurisdiction Under 28 U.S.C. § 1332.

"Title 28, United States Code, Section 1332(a)(1) gives district courts original jurisdiction to hear civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states [and] [t]he party asserting diversity jurisdiction bears the burden of proof by a preponderance of the evidence." Varzally v. Sears, Roebuck & Co., 2010 WL 3212482, 2 (E.D. Pa. July 30, 2010), *citing* McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir.2006). *See also* McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)(same). In the instant case, there is no

7

dispute regarding the sufficiency of the amount in controversy. The sole challenge is to the citizenship of BB&T, specifically BB&T's principal place of business.

As R&T Rentals and Smith correctly assert, the Supreme Court has defined "principle place of business" as "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," and recognized that "[l]ower federal courts have often metaphorically called that place the corporation's 'nerve center'." Hertz Corp. v. Friend, -- U.S. --, 130 S.Ct. 1181, 1186 (2010)(citations omitted). There is no contention that, prior to the assignment and transfer of Colonial Bank's assets to BB&T, BB&T's "nerve center" was located anywhere but Winston-Salem, North Carolina. There is also no contention in this case that BB&T has ever declared an intention to relocate its "nerve center" from Winston-Salem, North Carolina. Consequently, this case is unlike the case in which Exel Global Logistrics, Inc. submitted uncontroverted evidence that it was in the process of relocating its "nerve center" from New York to Texas both at the time the complaint was filed and on the date the action was removed to federal court and was ,therefore, held to be a citizen of both New York and Texas for diversity purposes. Engels v. Exel Global Logistics, Inc., 2005 WL 850879, *5-6 (N.D. Cal. April 11, 2005).

With respect to the citizenship of individuals for diversity purposes, "[t]here is a presumption of continuing domicile that applies whenever a person relocates." Acridge v. Evangelical Lutheran Good Samaritan Soc., 334 F.3d 444, 448 (5th Cir. 2003), *citing* Coury v. Prot, 85 F.3d 244, 250 (5th Cir. 1996). In Acridge, the Fifth Circuit held that:

> In order to defeat the presumption and establish a new domicile (the "domicile of choice"), the person must demonstrate both (1) residence in a new state, and (2) an intention to remain in that state indefinitely. Id.

> ("Mere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent.").

Acridge, 334 F.3d at 448. Such a "presumption" must logically apply to cases involving alleged relocation of a corporation's "nerve center" and thus its principal place of business for diversity purposes. Consequently, defendants would bear the initial burden of asserting more that BB&T's "mere presence" in Colonial Bank's former corporate headquarters building.

    C.    <u>Subject Matter Jurisdiction and 28 U.S.C. § 1359</u>.

The Assignee Clause of the Judiciary Act of 1789, as amended by the Judicial Code of 1948, provides:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke jurisdiction of such court.

28 U.S.C. § 1359. "[U]nder Section 1359, any assignee can sue in federal court so long as he was not improperly or collusively made a party in order to invoke federal jurisdiction." Caribbean Mills, Inc. v. Kramer, 392 F.2d 387, 389 (5th Cir. 1968), *aff'd* 394 U.S. 823 (1969)[7]. See also Harrell & Sumner Contracting Co., Inc. v. Peabody Petersen Co., 546 F.2d 1227 (5th Cir. 1977) (holding diversity jurisdiction was collusively obtained because the transferor retained a one-half interest in the outcome of the litigation, and was an indispensable party but for the assignment); Syms v. Castleton Industries, Inc., 470 F.2d 1078, 1089 (5th Cir. 1973)("[A]n attempt to create federal

---

[7] In Kramer v. Carribbean Mills, Inc., 394 U.S. 823 (1969) the Supreme Court noted that in appeal "we have no occasion to re-examine the cases in which this Court has held that where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive." 394 U.S. at 828 n. 9, *citing* Cross v. Allen, 141 U.S. 528 (1891); South Dakota v. North Carolina, 192 U.S. 286 (1904); Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518 (1928).

jurisdiction by colorable assignment or other device without substance is 'improper or collusive' within the meaning of the statute."). The Eleventh Circuit applied the Caribbean Mills analysis in Gilbert v. Wills, 834 F.2d 935, 927 (1987) and held that "the surviving members of the Gilbert family through their private agreement working in coalescence with the provisions of the Georgia wrongful death statute, O.C.G.A. § 51-4-3, manipulated the result in such a way as to manufacture diversity jurisdiction in precisely the same way as the assignments which the parties attempted to utilize in Caribbean Mills." In Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309 (11th Cir. 2007), the Eleventh Circuit "focus[ed] on the nature of the transfer, namely, whether the assignor has retained an interest in the assigned claim" and concluded that subject matter jurisdiction did not violate the anti-collusion statute because the assignor "retained no interest in the assigned claims at issue." 482 F.3d at 1315-16, *citing, inter alia*, Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 524-25 (1928)(held that it was not collusive for a non-diverse corporation to dissolve and transfer its property into a new corporation for the purpose of creating diversity of citizenship. . . [and] "[s]o long as '[t]he succession and transfer were actual, not feigned or merely colorable ... courts will not inquire into the motives when deciding jurisdiction'.").

In the case at bar, BB&T's interest in the loans at issue arose pursuant to the FDIC's assignment which was recorded in the Office of the Judge of Probate, Mobile County, Alabama in Records Book 6642 at page 1636 on April 5, 2010. (Doc. 34-1 at 3). At the time of this assignment, Colonial Bank had been dispossessed of its right, title and interest in the subject loan documents by virtue of being put in receivership. As a result,

Colonial Bank was not a party to the assignment and is not, therefore, an indispensible party in this action. The FDIC, as the appointed receiver of Colonial Bank, was the assignor and assigned *all* interest in the subject loans to BB&T. Neither the FDIC nor Colonial Bank has retained any interest in the loans at issue in this litigation. There exists, therefore, no evidence of any improper collusion under § 1359 in this case.

II. ANALYSIS

Defendant Bell's Motion to Dismiss.

Bell's motion is predicated, *inter alia*, on the assertion that "[t]here is no document submitted which reflects assignment of all of Colonial Bank's interest therein to Plaintiff" and that, under the Judiciary Act of 1789, "an assignment cannot be used to create federal jurisdiction." (Doc. 6 at ¶¶ 2 and 6-8). BB&T has, however, attached to its First Amended Complaint (doc. 21) documentation which establishes the assignment of *all* Colonial Bank's interest in the promissory notes at issue by the Federal Deposit Insurance Corporation (FDIC) as receiver for Colonial Bank. There is also no allegation in this case by any party that the FDIC's assignment to BB&T was made solely to shift any litigation from state to federal court and "any assignee can sue in federal court so long as he was not improperly or collusively made a party in order to invoke federal jurisdiction." Caribbean Mills, 392 F.2d at 389. Bell has not filed a motion to dismiss plaintiff's first amended complaint. Consequently, Bell's motion to dismiss (doc. 6) the complaint should be **DENIED** as **MOOT** on the grounds that plaintiff has now filed an amended complaint which properly alleges this Court's subject matter jurisdiction.

II. Motion to Dismiss filed by Defendants R&T Rentals and Smith.

Defendants R&T Rentals and Smith have adopted the arguments set forth in Bell's motion to dismiss (doc. 6) and added the contention that "dismissal of this case is also appropriate because Plaintiff merely alleges in conclusory fashion that its principal place of business is Winston-Salem, North Carolina." (Doc. 14 at ¶ 3). In their motion to dismiss the First Amended Complaint (doc. 22), R&T Rentals and Smith merely adopt their previous motion and reply brief (docs. 14 and 19). The arguments presented by R&T Rentals and Smith are, however, all without merit.

As stated above, the defendants challenge the existence of diversity jurisdiction under 28 U.S.C. § 1332 on two grounds: (1) BB&T has failed to prove that all of Colonial Bank's interest in defendants' loan/mortgage was assigned to BB&T; and (2) BB&T, has failed to prove that, as the successor to Colonial Bank, its principal place of business is in Winston-Salem, North Carolina. R&T Rentals and Smith have proffered no evidence to contravene the documents which establish that the FDIC, as receiver of Colonial Bank's assets, assigned and transferred ***all*** Colonial Bank's interest and rights in the subject loans. Similarly, the challenge regarding BB&T's citizenship is predicated solely on the unsupported contention of R&T Rentals and Smith that Colonial Bank's former corporate headquarters now bears a sign indicating that BB&T now occupies that building. Consequently, the challenge made by R&T Rentals and Smith must be deemed merely a facial attack on this Court's jurisdiction which merely necessitates the Court's consideration of "the sufficiency of the allegations in the complaint because they are presumed to be true." Paterson, *supra*, 644 F.2d at 523. Because the allegations in BB&T's First Amended Complaint are sufficient to establish the existence of diversity

jurisdiction in this case, the motion to dismiss filed by R&T Rentals and Smith is due to be denied.

R&T Rentals and Smith adopted Bell's arguments (*see* docs. 6, 14 and 22), including the contention that the assignment in this case in some unspecified manner violated the anti-collusion statute, 28 U.S.C. § 1359. For the reasons stated above, this contention must also be rejected. Colonial Bank was not a party to the assignment and, in view of its lack of any interest in the loans and other assets assigned, could neither be a party to the assignment nor coalesce with BB&T in order to create federal jurisdiction in violation of § 1359. It was the FDIC which assigned and transferred the loans at issue in this litigation after Colonial Bank was divested of ***all*** interest in such loans. There exists, therefore, no evidence of any improper collusion under § 1359 in this case. Accordingly, defendants' motion to dismiss is due to be **DENIED**.

## CONCLUSION

For the reasons stated above, it is the recommendation of the undersigned that the motion to dismiss filed by C. Thurmon Bell (doc. 6) be **DENIED as MOOT** because it was not directed to plaintiff's First Amended Complaint (doc. 21) and that the motions to dismiss filed by R&T Rentals, L.L.C. and F. Rutherford Smith Jr. (doc. 22) be **DENIED** for the above stated reasons. The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**Done** this 4th day of April, 2011.

/s/ Katherine P. Nelson
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE

# RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
# AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

Objection. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days[8] after being served with a copy of the recommendation, unless a different time is established by order." The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

Transcript (applicable where proceedings tape recorded). Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Done this  4th  day of April, 2011.

> /s/ Katherine P. Nelson
> UNITED STATES MAGISTRATE JUDGE

---

[8] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).