**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 10-0518-KD-N** |
| | ) | |
| **R&T RENTALS, L.L.C., and** | ) | |
| **F. RUTHERFORD SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

At the final pretrial conference, plaintiff Branch Banking and Trust Company (BBT) and

defendants R&T Rentals, LLC (R&T) and F. Rutherford Smith (Smith) agreed to submit this

non-jury action for trial solely upon the parties' respective trial briefs without appearance at trial

(doc. 64). R&T and Smith did not file their respective trial briefs or provide any defense to

BBT's claims for breach of promissory note and breach of guaranty agreements. Therefore, this

action is before the Court for non-jury trial on the trial brief, affidavits, and exhibits submitted by

BBT (doc. 66). Upon consideration of the trial brief, affidavits, and exhibits and the relevant

evidence of record, the Court makes the following findings of fact and conclusions of law[1]:

**I. Procedural background**

BBT brought this action for breach of promissory note and breach of guaranty

agreements against R&T, Smith, and C. Thurman Bell (doc. 21, amended complaint). Smith and

---

[1] Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58." Fed. R. Civ. P. 52(a).

Bell were guarantors of R&T's promissory note.  Bell filed a Chapter 11 bankruptcy action and this action remains stayed as to Bell (docs. 51, 55).  All defendants moved to dismiss on basis of lack of subject matter jurisdiction and their motions were denied (docs. 6, 14, 22, 35-36).

R&T and Smith answered and denied almost all the factual allegations in the amended complaint.  They admitted only their Alabama citizenship, proper venue, and that this was a suit on a promissory note and guaranty agreements which exceeded the jurisdictional amount.  R&T and Smith also raised ten affirmative defenses (doc. 37).

The parties mediated and reached a settlement agreement.  Upon notice to the Court, this action was dismissed as to R&T and Smith (doc. 50).  However, the settlement agreement was not completed and BBT moved to reinstate (doc. 54).  The motion was granted and the action was reinstated for non-jury trial (doc. 55).  In their Joint Pretrial Document, the parties narrowed their issues for resolution and identified their disputed facts and undisputed facts.  In the Order on Final Pretrial Conference, the Court incorporated the Joint Pretrial Document by reference as the final statement of the issues and the basis for any relief afforded by the Court (docs. 63, 64).

## II.   Findings of Fact

### A.  R&T's Promissory Note

On November 28, 2005, R&T executed and delivered to Colonial Bank, a promissory note in the principal amount of $126,978.46 (docs. 63, p. 5, Joint Pretrial Document, Agreed Facts, § C.1.b(ii) (agreeing that R&T executed the note); 66-12, copy of note; 66-10, ¶¶ 7, 12, Affidavit of Phillip Justiss, Vice President of BBT (authenticating the copy);  66-1, ¶ 9, Affidavit of Thomas Brent Hicks, Senior Vice President, Senior Financial Executive - Asset Resolution of BBT).  As a condition of the promissory note,  R&T agreed to pay all costs including a reasonable attorneys' fee, if legal proceedings were instituted to enforce the terms of the

promissory note (docs. 66-10, ¶16; 63, p. 5, Agreed Facts, § C.1.b(vi)).

**B. Smith's Guaranty Agreements**

On August 6, 2004, Smith executed and delivered to Colonial Bank, a continuing unlimited guaranty agreement which guaranteed R&T's loan (docs. 63, p. 5,  Agreed Facts, § C.1.b(ii); 66-13, copy of the guaranty).  On April 17, 2007, Smith executed and delivered to Colonial Bank, a continuing unlimited guaranty agreement which guaranteed R&T's loan (docs. 63, p. 5, Agreed Facts, § C.1.b(ii); 66-14, copy of the guaranty).  According to the terms of the both guaranty agreements, Smith agreed to pay all costs including a reasonable attorneys' fee, if legal proceedings were instituted to enforce the guaranty (docs. 66-13; 66-14; 66-10, ¶16; 63, p. 5, Agreed Facts, § C.1.b(vi)). Smith waived notice of R&T's default or non-payment. Both guaranty agreements state that the "Guarantor hereby waives all notices hereunder, demand, presentation and any and all notices of protest, default, or nonpayment." (docs. 66-13, 66-14).

**C. Colonial Bank's receivership**

On August 14, 2009, Colonial Bank failed and the State of Alabama appointed the Federal Deposit Insurance Corporation (FDIC)  as receiver (docs. 66-1, ¶ 5;66-15, p. 3-5, Certificate of Appointment and Acceptance by the FDIC).

**D.  The FDIC's Transfer of Assets to BBT**

Also effective August 14, 2009, BBT acquired R&T's promissory note and Smith's guaranty agreements by way of a Purchase and Assumption Agreement between BBT and the FDIC as receiver for Colonial Bank (docs. 66-1, ¶ 6-11; 66-2 through 66-8, Purchase and Assumption Agreement; 66-9, Schedule 4.15B, listing R&T's promissory note among the commercial loans acquired).

Additionally, on August 14, 2009, the FDIC executed an allonge to the promissory note,

which  indicated the lender as Phillip Justiss,  and was made "Pay to the order of Branch

Banking and Trust Company . . ." (doc. 66-12, p. 3).  The allonge transferred ownership and

possession of the promissory note from the FDIC to BBT.

Also, on March 22, 2010, the FDIC executed an Assignment of Security Instruments and

Other Loan Documents wherein all of Colonial Bank's interests in same of record as of August

14, 2009, including the promissory note and guaranty agreements at issue in this action, were

assigned to BBT (docs. 66-10, ¶13; 66-15, p. 1-2, Copy of Assignment; 63, p. 5, Agreed Facts, §

C.1.b(v) agreeing to authenticity of copy of the Assignment; 66-15, p. 6-9, Limited Power of

Attorney to transfer and convey pursuant to the Purchase and Assumption Agreement).

R&T's promissory note and Smith's guaranty agreements were executed before August

14, 2009.  Therefore, by virtue of the above transactions, BBT is the owner and holder of the

promissory note and the guaranty agreements (doc. 66-10, ¶13).

**D. Default**

R&T defaulted on the promissory note by failing to make payment due on November 28,

2009 and the final payment due at maturity on November 28, 2010 (docs. 66-10, ¶14, noting the

last payment was received on November 6, 2009 and applied to the amounts past due; 63, p. 5,

Agreed Facts, § C.1.b(iii)).  Smith defaulted on the guaranty agreements by failing to pay the

amount due under the promissory note in accord with the terms of the guaranty agreements (doc.

63, p. 5,  Agreed Facts, § C.1.b(iv)).  As of April 13, 2012, Smith and R&T owed BBT, the

principal sum of $108,167.40 plus interest accrued through April 12, 2012, (at 7.86%), in the

amount of $21,210.66, for a total of $129,378.06 (doc. 66-10, ¶ 15). Interest continues to accrue

at the per diem rate of $23.62 (doc. 63, p. 9, §L).

**III.     Conclusions of Law**

**A. Venue**

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to BBT's claims for breach of promissory note and guaranty agreements occurred in the Southern District of Alabama.

**B. Jurisdiction and Choice of Law**

This action is properly before this Court on basis of diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) (docs. 35, 36, Report and Recommendation and order adopting same).  "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits."  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Therefore, the Court must decide which state's law governs this breach of contract action between BBT, a North Carolina corporation, and citizens of Alabama.  In the forum state Alabama, the courts follow the traditional conflict-of-law principles of *lex loci contractus*. *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200 (Ala. 2009).  Thus, contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's law to govern their agreement, *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991) ("Alabama follows the principle of 'lex loci contractus,' which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction.").

The promissory note and guaranty agreements were executed and delivered to Colonial Bank, BBT's predecessor, in Alabama.  The promissory note states that "[t]his Agreement has been delivered in the state where the Lender is located and shall be construed in accordance with the laws of that State" (doc. 66-12, p. 2).  Therefore, the promissory note is governed by the laws

of Alabama. The guaranties do not appear to contain any provision regarding the applicable law (docs. 66-13, 66-13).  However, both show Colonial Bank as the Lender with its location as Mobile, Alabama and R&T as the borrower with its location in Orange Beach, Alabama and Point Clear, Alabama.  Since the guaranties were made in Alabama, and the contracting parties did not chose otherwise, the guaranties are governed by the laws of Alabama.

### C. Alabama Law on Breach of Contract

In order to prevail on its breach of promissory note claim, BBT must establish  the following elements of a breach-of-contract claim "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala. 2009); *Vision Bank v. Algernon Land Co., L.L.C.*,  2011 WL 1380062, 7  (S.D. Ala. Apr. 12, 2011); *Wachovia Bank, NA v. L&H Investments, LLC*, 2010 WL 3825572, *4 (M.D. Ala., Sep. 24, 2010).

### D. Alabama Law on Breach of Guaranty Agreement

In order to prevail on its breach of guaranty agreement claim, BBT must establish the existence of Smith's guaranty agreements, default on the underlying promissory note by R&T, and nonpayment by Smith as the guarantor. *Branch Banking and Trust Co. v. Broaderip*, 2011 WL 3511774, 3 (S.D.Ala. Aug. 11, 2011) ("Every suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty.") *quoting Delro Industries, Inc. v. Evans*, 514 So.2d 976, 979 (Ala. 1987); *see also e.g., Vision Bank v. Algernon Land Co., LLC*, 2011 WL 1380062, *7–8  (S.D.Ala. Apr. 12, 2011); *Sharer v. Bend Millwork Sys., Inc.*, 600 So.2d 223, 225–226 (Ala. 1992).

The guaranties at issue are continuing guaranties.  Generally an additional element of

notice of R&T's default to Smith as the guarantor must also be proven.  However, Smith waived the notice requirement through the terms of the guaranty. (doc. 66-13, 14).  *See, e.g., Sharer*, 600 So.2d at 226.  In that regard, "[t]he language of the guaranty is controlling in determining whether the holder of the guaranty is under a duty to notify the guarantor of a default by the principal, and notice need not be given when the terms of the guaranty expressly dispense with the need for it." *Wells Fargo Bank v. Richard D. Horne*, LLC, 2010 WL 5376341, *3 at n.1 (S.D.Ala. Dec. 27, 2010); *see also RBC Bank v. CMI Electronics, Inc.*, 2010 WL 2719096, *2 (M.D. Ala. Jul. 8, 2010) ("[i]n the case of a continuing guaranty, it is also necessary to prove that the guarantor received notice of the debtor's default, unless that right has been waived by the terms of the guaranty contract.").  Therefore, notice to Smith was not required.

Moreover, when a contract is "one of absolute guaranty," as in this case, "the failure of the principal to pay the debt within the time provided in the principal contract fixed the liability of the guarantors, without regard to the question of the principal's solvency or insolvency, and the plaintiff was under no duty to the guarantors to pursue its remedy against the principal as a prerequisite to its right to recover against the guarantors." *Ehl v. J.R. Watkins Medical Co.*, 112 So. 426, 426 (Ala. 1927); *In re Southern Cinemas, Inc.*, 256 B.R. 520, 527 (Bkrtcy. M.D.Fla. 2000) (holding under Alabama law that "[i]n order to be entitled to enforce the obligation of the contract of guaranty, the creditor must show that the guaranteed debt or obligation is due.").

### E. Breach of the Promissory Note and Guaranty Agreements

In the trial brief, BBT argues that R&T breached the terms of the promissory note by failing to make payments and therefore is in default.  BBT also argues that Smith breached the terms of the guaranties by failing to pay the balance due on the promissory note and therefore is in default. Smith and R&T did not file a trial brief and failed to defend against BBT's argument.

However, in the Joint Pretrial Document, R&T agreed that it executed the promissory note and "defaulted under the note by failing to make the required payments due pursuant to the terms of the note." (doc. 63, p. 5, Agreed Facts, § C.1.b(ii)&(iii)).  Also, Smith agreed that he executed the guaranty agreements and "defaulted under the guaranty by failing to pay the amount due under the note pursuant to the terms of his guaranty." (doc. 63, p. 5, Agreed Facts, § C.1.b(ii)&(iv)).  Smith and R&T admitted their default but disputed "[w]hether the assignment of the R&T loan from the FDIC to BB&T was an effective transfer" and "[w]hether BB&T has the right to enforce the note and guaranty." (doc. 63, p. 5, § C.1.c(i)&(ii)).

This Court incorporated the Joint Pretrial Document by reference into the Order on Final Pretrial Conference (doc. 63, 64).  In so doing, the Court held that the Order on Final Pretrial Conference and the Joint Pretrial Document would "constitute the final statement of the issues involved in this action, govern the conduct of the trial, and form the basis for any relief afforded by the Court." (doc. 64, p. 1).  Therefore, the issues for resolution at trial are whether the FDIC's assignment was effective and whether BBT has the right to enforce the note and guaranty.

R&T and Smith asserted several affirmative defenses to BBT's claims: "That BB&T is not the owner and holder of the loan documents"; . . . "The assignments of the loan documents from Colonial Bank to the FDIC and from the FDIC to BB&T are defective": . . . "Lack of consideration regarding the assignment of the loan documents to BB&T"; . . . "Economic impracticability"; . . . "BB&T lacks standing to enforce the loan documents": . . . "BB&T is not a holder in due of the loan documents"; . . . and "Settlement and Release" (doc. 63, Joint Pretrial Document, p. 5-7).  All of R&T's and Smith's defenses except for "Economic impracticability" and "Settlement and Release", hinge upon the validity of the Assignment of Colonial Bank loan agreements from the FDIC to BBT.

Generally, the "party who has asserted an affirmative defense has the burden of proving the affirmative defense." *BMI Salvage Corp. v. Federal Aviation Administration*, 272 Fed. Appx. 842, 852 (11th Cir. 2008).  However, R&T and Smith failed to meet their burden because they did not present any evidence in support of these affirmative defenses.  Hence, they failed to present any evidence that the Assignment is ineffective or that BBT is not the holder and owner of the promissory note such that it does not have the right to enforce these contracts.[2]

BBT as the plaintiff still bears its burden to prove its case at trial.  As to the right to enforce, BBT argues that the FDIC properly obtained title to the loan documents and became the holder thereof when Colonial Bank was closed by the Alabama State Banking Department and the FDIC was appointed as receiver pursuant to Ala. Code §5-8A-25.  BBT provides the Court with a copy of the FDIC's  recorded documents whereby the failure of Colonial Bank was certified by the State of Alabama, the FDIC was appointed receiver, and the FDIC accepted the appointment  (doc. 66-15, p. 3-5).  The Court finds this evidence sufficient to establish that the FDIC became a holder and owner of the loan documents under Ala. Code §7-3-301. *See Branch Banking and Trust Company v. The Inn at Dauphin Island, L.L.C.,* 2012 WL 2415091 (S.D. Ala. June 26, 2012) ("However, having received possession of and title to the Note pursuant to Section 5–8A–25, the FDIC necessarily succeeded to Colonial's statutory right, as a holder, to enforce the Note under Section 7–3–301.")

Having determined that the FDIC became a holder with authority to enforce the terms of the loan documents, the Court must next determine whether the FDIC's transfer of the loan

---

[2]  R&T and Smith did not present any evidence in support of the affirmative defense of Economic Impracticability.  As to Settlement and Release, R&T and Smith stated in the Joint Pretrial Document that there was a mediation settlement agreement.  However, that settlement failed and the case was reinstated.  Therefore, they did not met their burden as to these affirmative defenses.

documents to BBT was a valid transfer such that BBT has the right to enforce.  In that regard

BBT argues that the FDIC had the responsibility under Ala. Code §5-8A-24 to liquidate and

distribute the assets of Colonial Bank, including the loan documents at issue.  BBT provides

evidence of three transactions by which the FDIC transferred assigned and endorsed the loan

documents to BBT and vested in BBT the right to enforce.  First, BBT provides the Court with

the Purchase and Assumption Agreement between the FDIC and BBT as evidence of the bulk

transfer of Colonial Bank's assets and liabilities to BBT with certain exceptions not relevant here

and with Schedule 4.15B which specifically lists the R&T promissory note among those assets

transferred (docs. 66-1, ¶ 8-11; 66-2 through 66-8; 66-9).  Second, BBT provides the Court with

the Assignment of Security Instruments and Other Loan Documents (doc. 66-15, p. 1-2,

Assignment; p. 6-9, Limited Power of Attorney to transfer and convey pursuant to the Purchase

and Assumption Agreement) wherein the FDIC sold, assigned, and transferred all right, title and

interest in all "instruments and security agreements securing loans owned by Colonial Bank . . .

as of August 14, 2009" and in

> the promissory notes, loan documents and all other indebtedness secured by the
> Security Instruments, as evidenced by related promissory notes, any and  all loan
> agreements, pledges, security agreements and UCC financing statements and all
> modification, extensions amendments and renewals to said documents and
> instruments together with any and all other loan documents, title policies and
> casualty insurance policies evidencing, securing or relating to any of the
> foregoing all of which have been delivered to the Assignee.

(doc. 66-15, p. 1).

Last, BBT provides the Court with the FDIC's indorsement to BBT by allonge attached

to the promissory note.[3]  BBT argues that the allonge constitutes undisputed evidence that the

---

[3]  Ala. Code § 7-3-204(a), in relevant part, defines indorsement as "a signature, other than
that of a signer as maker . . . that alone or accompanied by other words is made on an instrument
for the purpose of (i) negotiating the instrument . . .  For the purpose of determining whether a
(Continued)

FDIC indorsed the promissory note to BBT, that it is in possession of the original promissory note,  and is now the holder of the loan as "holder" is defined in Ala. Code § 7-1-201(21).[4]

The Court finds that BBT has provided sufficient evidence to prove that the FDIC's assignment and transfer of the loan documents to BBT was valid and effective to vest ownership and possession of the loan documents in BBT.  Therefore, the Court finds that BBT has the right to enforce the loan documents because it is the holder of the note under Ala. Code § 7-3-201[5] by way of the indorsement on the allonge and is the transferee of the loan documents as contemplated under Ala. Code §  7–3–203(a) and under Ala. Code § 7–3–203(b).[6]  *See Branch Banking and Trust Company v. The Inn at Dauphin Island, L.L.C.,* 2012 WL 2415091, 4 (S.D. Ala. June 26, 2012) (discussing the necessity of the FDIC's indorsement either on the face of the promissory note or an allonge affixed to the note to constitute BBT as a holder of the note under Ala. Code § 7-3-201); *Id.* (addressing "whether the FDIC transferred the right to enforce the Note to [BBT] and finding that the "evidence is uncontroverted that the FDIC voluntarily

---

signature is made on an instrument, a paper affixed to the instrument is a part of the instrument."

[4] Ala. Code § 7-1-201(21) ("'Holder' means: (A) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession . . .").

[5] "'Negotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." Ala. Code § 7-3-201(a).  "Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." Ala. Code § 7-3-201(b).

[6] "'Delivery,' with respect to an instrument ..., means voluntary transfer of possession." Ala. Code § 7–1–201(15).  "An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Ala. Code § 7–3–203(a). "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument . . ." Ala. Code § 7–3–203(b).

transferred possession of the Note to [BBT] and that it did so for the purpose of giving [BBT] the right to enforce the Note" and finding that the "FDIC therefore transferred the Note to [BBT] under [Ala. Code] Section 7–3–203(a) and, under [Ala. Code] Section 7–3–203(b), that transfer vested in [BBT] the FDIC's proven right to enforce the Note."); *Branch Banking and Trust Company v. The Inn at Dauphin Island*, LLC, 2011 WL 1398812, 2 (S.D.Ala. April 13, 2011) (finding that "[a]t a factual level, the Inn is simply wrong to suggest there is no evidence that Colonial's former interest in the loan documents is now held by the plaintiff. There is in the record an 'Assignment of Security Instruments and Other Loan Documents' from the FDIC to the plaintiff, which transfers to the plaintiff 'all of Assignor's rights, title and interests in and to the promissory notes, loan documents and all other indebtedness secured by the Security Instruments,' . . .  this transaction effected 'the bulk assignment of Colonial Bank's entire loan portfolio existing as of August 14, 2009."); *See Branch Banking and Trust Co. v. Imagine CBQ, LLC*,  2012 WL 1252582, 4 (S.D. Ala. April 13, 2012) (finding "no dispute of material fact that BBT owns and holds the promissory notes and guarantee agreements" because defendants did not submit any evidence to rebut the validity of the August 14, 2009, Assignment of Security Interest and Other Loan Documents).

### F. Damages

As a "general rule", under Alabama law, "damages in a breach-of-contract action are that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached." *Goolesby v. Koch Farms, LLC*, 955 So.2d 422, 427 (Ala. 2006) (citations and internal quotation marks omitted).  The breach of contract having been established, the Court finds that BBT is entitled to damages. In that regard, BBT seeks the principal amount of $108,167.40 plus interest accrued through April 12, 2012, (at 7.86%), in the amount of

$21,210.66, for a total of $129,378.06 (doc. 66-10, Justiss Affidavit, ¶ ; doc. 66-14, copy of the guaranty; doc. 66-11 payment history). In the joint pretrial document, BBT sought interest at the per diem rate of $23.62 (doc. 63, p. 9, § L). As of the date of this order, July 12, 2012, ninety-one (91) days have passed since April 12, 2012, and additional interest has accrued in the amount of $2,149.42.

The proffer of an uncontested copy of the loan documents and the affidavit testimony of BBT's Vice President Justiss are sufficient evidence of the balance due. *See Wells Fargo Bank, N.A. v. Vergos*, 2012 WL 206169, *2 (S.D. Ala. Jan. 24, 2012) ("Alabama law provides that the proffer of a copy of the note and affidavit testimony as to the amounts due under the note, as well as the defendant's failure to make the required payments, is sufficient to establish a plaintiff's case to recover a note.") citing *Griffin v. American Bank*, 628 So.2d 540, 543 (Ala. 1993) (affidavit submitted by bank president). Therefore, as of the date of this order, the total amount due to BBT is $131,527.48.

**G.  BBT's Claim for Costs and Reasonable Attorneys Fees.**

BBT argues that R&T's promissory note provides for contractual damages including a reasonable attorneys' fees and costs (doc. 66-12). Smith's guaranty agreements also contain a provision  whereby he agreed to pay all costs including a reasonable attorneys' fee, if legal proceedings were instituted to enforce the guaranty (doc. 66-13, doc. 66-14). In that regard, "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract...." *Jones v. Regions Bank*, 25 So. 3d 427, 441 (Ala. 2009) (citations omitted). Also, "[i]n this Circuit, a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1355 (11th Cir.2002). Therefore, "[w]hen the

parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case." *Ierna v. Arthur Murray Int'l, Inc.*, 833 F.2d 1472, 1476 (11th Cir. 1987).

In this court, an award of a reasonable attorney's fee begins with the analysis of a reasonable hourly rate multiplied by the hours reasonably expended, i.e., the lodestar, and then if applicable, adjustments to the lodestar. *See Norman v. Housing Authority of City of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988).  The reasonable hourly rate is generally "the prevailing market rate in the legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895-896 n. 11 (1984).  The movant bears the burden of establishing the "reasonableness" of the attorney's fees by providing specific evidence supporting the hours and rates claimed. *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999).  In making its determination of the reasonable hourly rate, reasonable time expended, and in making adjustments to the lodestar, the Court may consider the relevant factors[7] identified by the Court of Appeals in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359, n. 1 (11th Cir. 2006)

---

[7] In *Norman*, the Eleventh Circuit explained that "at least some of the [*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)] , factors have utility in establishing the hourly rate. In evaluating comparability of the market rates being attested to, the district court may wish to consider any of the *Johnson* factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court." *Norman*, 836 F. 2d at 1299-1300.

(citing *Johnson*, 488 F.2d at 717–719).   Additionally, this action is before the Court on the basis

of diversity jurisdiction.  Therefore, any fee award should be consonant with Alabama law,

which considers such factors as

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

*Van Schaack v. AmSouth Bank, N.A.*, 530 So.2d 740, 749 (Ala. 1988) (citing Peebles v. Miley,

439 So.2d 137 (Ala. 1983)).

However, "not all of the criteria will be applicable" *Van Schaack*, 530 So. 2d at 749, and

this is not an exhaustive list of specific criteria all of which must be met. *Beal Bank, SSB v.

Schilleci,*896 So. 2d 395, 403 (Ala. 2004).  Additionally, as to the hours reasonably expended,

counsel should exercise "billing judgment" and exclude "excessive, redundant, or otherwise

unnecessary" hours. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40

(1983).  Moreover, the Court may utilize its own "knowledge and expertise" to determine the

reasonableness of requested attorney's fees. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.

1994).

### 1. Reasonable hourly rate

BBT provides the Court with an affidavit from David A. Boyett, III, who is a partner in

the firm of Anders Boyett and Brady, PC.  Boyett has practiced law in Mobile, Alabama since

1984 and now primarily in the area of business and banking litigation (doc. 66-17, p. 1).  Boyett

vouches for the reasonableness of the hourly rates for Judson C. Brandt, Jeremy Branning and

Charles F. James IV.   However, the Court may also apply its own "knowledge and expertise" to

determine a reasonable hourly rate. *Loranger,* 10 F.3d at 781.

In that regard, the Court finds that the hourly rates of $203.00 and $210.00[8] for associate Brandt is in excess of the hourly rate of $170.00 which this Court has recently awarded for an associate with five years[9] experience representing BBT in similar litigation. *Branch Banking and Trust Co. v. Imagine CBQ, LLC*, 2012 WL 1987830, 2 (S.D. Ala. June 24, 2012).  The Court also finds that the hourly rate of $225.00 for shareholder Branning, who has eleven years experience, and for shareholder James, who has eleven years experience, is appropriate. Therefore, the Court finds that $170.00 is a reasonable hourly rate for an associate with five years experience and $225.00 is a reasonable hourly rate for partners with ten and eleven years experience respectively.

### 2. Reasonable time expended

Boyett also states that he has reviewed the pleadings, briefs, and the Statement of Account provided by BBT's attorneys and that based upon his review and his knowledge, training, and experience, he finds that the number of hours billed were reasonable and necessary to perform the work in this case and that the attorneys performed their work in a reasonable manner; therefore, their attorneys' fees are reasonable (doc. 66-17, p. 3).  The Court has also reviewed the time entries in the Statement of Account and the docket in this action,[10] and agrees

---

[8]  Brandt identified $203.00 as his hourly rate.  The Statement of Account indicates Brandt also invoiced an hourly rate of $210.00. (doc. 66-16).

[9]  The Court obtained information as to the years of practice from the website for Clark Partington Hart Larry Bond & Stackhouse.

[10] The Court is aware that in addition to filing its complaint to enforce the breach of contract, and the work incidental thereto, BBT defended the motions to dismiss, addressed a jurisdictional issue regarding the citizens of the defendant LLC, performed additional work because one defendant filed bankruptcy, engaged in a mediation which resulted in a settlement which ultimately was not completed, obtained reinstatement of this action, attended the pretrial (Continued)

that the time expended and the work performed was reasonable under the circumstances.

However, the following exceptions are disallowed:

Time spent instructing paralegals or non-lawyer staff, or drafting, sending or reviewing

memorandum regarding same:[11]

| | | |
|---|---|---|
| 9/26/2010 | JCB2 | .20 |
| 10/4/2010 | JCB2 | .10 |
| 10/8/2010 | JCB2 | .10 |
| 11/8/2010 | JCB2 | .10 |
| 11/18/2010 | JCB2 | .10 |
| 12/14/2010 | JCB2 | .10 |
| 2/7/2011 | JCB2 | .10 |
| 2/24/2011 | JCB2 | .10 |
| 5/16/2011 | JCB2 | .10 |
| 6/24/2011 | JCB2 | .10 |
| 8/2/2011 | JCB2 | .10 |
| 8/24/2011 | JCB2 | .10 |
| 8/30/2011 | JCB2 | .20 |
| 9/7/2011 | JCB2 | .10 |
| 10/17/2011 | JCB2 | .10 |
| 2/1/2012 | JCB2 | .10 |
| 2/7/2012 | JCB2 | .10 |
| 2/22/2012 | JCB2 | .10 |
| 3/13/2012 | JCB2 | .20 |
| 4/9/2012 | JCB2 | .10 |
| | | |
| Time disallowed | | 2.30 |

Time spent performing clerical acts

| | | |
|---|---|---|
| 10/6/2010 | JCB2 | .10 |
| | | |
| Time disallowed | | .10 |

---

conference, and prepared a bench trial brief.

[11]  The majority of the time entries for instructing a paralegal or non-lawyers staff were included in a block-billed time entry.  Therefore, .10 hours will be deducted as the Court's estimate of a reasonable amount of time to instruct.

The Court has also identified some instances of duplicate or redundant entries for the same work performed by two attorneys. For instance, two attorneys reviewed this Court's order to meet and file a Supplemental Rule 26(f) Report (compare entries for JCB and JCB2 dated May 13, 2011). The circuit court in *Norman* stated that "[r]edundant hours generally occur where more than one attorney represents a client" and "they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1301-1302 (11th Cir. 1988). Therefore, the following time is disallowed as an unreasonable redundant duplication of work.

| | | |
|---|---|---|
| 5/13/2011 | JCB | .10 |
| 5/23/2011 | JCB | .20 |
| 6/15/2011 | JCB | .40 |
| 6/22/2011 | JCB | .20 |
| 9/14/2011 | JCB | .10 |
| 3/2/2012 | JCB | .10 |
| 4/2/2012 | JCB | .10 |
| | | |
| Time disallowed | | 1.20 |

### 3. Calculating the Lodestar

Therefore, the following attorneys' fees are allowed:

| | | |
|---|---|---|
| CFJ | 1.40 hours at $225.00 | $315.00 |
| JCB | 6.50[12] hours at $225.00 | $1,462.50 |
| JCB2 | 115.70[13] hours at $170.00 | $19,669.00 |
| | | |
| Total attorneys fees | | $21,446.50 |

---

[12] The Statement of Account indicates that JCB invoiced 7.70 hours and deducting 1.20 hours, yields 6.50 hours (doc. 66-16, p.15).

[13] The Statement of Account indicates that JCB2 invoiced 110.10 hours and deducting 2.40 hours, yields 115.70 hours (doc. 66-16, p.15).

**4. Adjustments to the Lodestar**

Upon consideration of the relevant factors, the Court finds that adjustments to the lodestar are not appropriate. Specifically, the following factors: the nature and value of the subject matter; the learning skill and labor required; the time consumed; the attorneys' respective experience; and the customary fee in this market for attorneys of similar experience; were applied in the Court's calculation of a reasonable hourly rate and reasonable time expended. Additionally, the amount of time expended and the number of attorneys and paralegals involved indicates that work on this case did not preclude other employment, was charged by an hourly rate for an established client, and was not subject to time limitations such that an adjustment would be appropriate.

**5. Paralegal fees**

BBT made no claim as to paralegal fees and no hourly rate for paralegals was set forth in the brief or the supporting affidavits. Therefore, as to "FS", "JB" and "LAP", whose time was invoiced at the hourly rate of $113.00 or $115.00, the Court cannot ascertain whether they are attorneys or paralegals.  Therefore, $1,766.50 invoiced for their time is disallowed.

**6. Costs**

BBT seeks costs in the amount of $1,483.55 for copying, travel, Westlaw research, Pacer research, title insurance, filing fee, and private process server  (doc. 66-16, p. 15-17).  The promissory note and guaranty agreements both provide for payment of all costs in the event of proceedings to enforce the promissory note or the guaranty agreements, without qualification as to the reasonableness of the costs (*see* doc. 66-13,  66-14, 66-15).  Based on the terms of these contracts, the Court finds that BBT is entitled to recover all costs. *See, e.g., Peppertree Apartments, Ltd. v. Peppertree Apartments*, 631 So .2d 873, 878 (Ala. 1993) (providing that

"[t]he intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous[ ]").  Therefore, costs in the amount of $1,483.55 are awarded to BBT.

## IV.    Conclusion

For the reasons set forth herein, it is ORDERED that the Court finds in favor of BBT on Counts One and Two of its complaint.  It is FURTHER ORDERED that BBT is entitled to judgment against R&T and Smith, jointly and severally, for damages in the amount of $131,527.48 for the balance due on the promissory note plus interest, plus attorney's fees in the amount of $21,446.50, and costs in the amount of $1,483.55, for a total of $154,457.53.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, final judgment shall be entered by separate document.

**DONE** and **ORDERED** this the 12th day of July, 2012.

> **/s/ Kristi K. DuBose**
> **KRISTI K. DuBOSE**
> **UNITED STATES DISTRICT JUDGE**